IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08-03109-01/03-CR-S-ODS |
| | ) | |
| CLAUDE X, AARIKA TRACY, and | ) | |
| CHRISTINA X, | ) | |
| | ) | |
| Defendants. | ) | |

<u>ORDER AND OPINION (1) OVERRULING OBJECTIONS TO MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION AND (2) DENYING DEFENDANTS'
MOTIONS TO SUPPRESS AND FOR IDENTIFICATION OF INFORMANTS</u>

Defendants filed separate motions to suppress evidence. Aarika Tracy also filed a motion seeking identification of confidential informants. On October 14, 2009, the Honorable James C. England, Chief Magistrate Judge for this district, issued his Report and Recommendation ("Report") that the motions be denied. Defendants Aarikia Tracy and Christina X filed objections. The Court has conducted a de novo review of the record, which consists of the parties' filings and attachments (which includes the application for the search warrant) and the transcript of the hearing held by Judge England. The Court overrules Defendants' objections, adopts the Report as the Order of the Court, and denies the motions.

I. <u>BACKGROUND</u>

On September 30, 2008, Special Agent Timothy Krisik of the DEA presented an affidavit in support of a search warrant to a Magistrate Judge. The affidavit is over sixteen pages long and will be summarized here. In December 2006 an informant provided information about Claude X's involvement in drug trafficking, which caused an investigation to commence. Drugs were found in Claude's[1] care during a traffic stop in

---

[1]Defendants' first names will be used in the interest of clarity.

January 2007. In March 2007, Claude was found with a large quantity of cash. In May 2007, a hotel room registered to Claude was found to have drugs and drug paraphernalia. A gun was found in Claude's care during a traffic stop in October 2007. In February 2008, Brandon Brown was found in a car with drugs; he later told police he received the drugs from Claude. In March and April 2008, confidential informants told law enforcement additional details about Claude's drug activity, including places he frequented, names of regular customers, and places where he sold and kept drugs. Among other things, the informants told law enforcement (1) Claude kept drugs at Aarika's house, (2) Christina sold for Claude, and (3) one of the places Claude sold drugs from was the Battlefield Mall parking lot.

     Law enforcement arranged a series of controlled purchases of drugs from Claude. The purchases were arranged in telephone conversations with Claude, but Claude was not personally involved in the transactions. In April 2008, following arrangements made with Claude, drugs were purchased from Aarika. In May 2008, following arrangements with Claude, drugs were purchased from an unknown female who appeared to be a minor; surveillance teams observed Claude and the minor together at the designated place for the transaction. In June 2008, following arrangements with Claude, drugs and a gun were purchased from Aarika. In July 2008, arrangements made with Claude again led to the purchase of drugs from Aarika; this time, surveillance observed Claude and Aarika arrive together in Claude's car. A traffic stop was conducted immediately after this transaction, and the cash used for the controlled buy – along with an additional sum of over $1,400 in cash – was found in Claude's pocket.

     On May 13, 2008, Claude was observed to enter several stores in Battlefield Mall and talk with employees. Before and after his appearance at the mall, he went to the Great Southern Bank. Investigation revealed Claude had access to two safe deposit boxes. One (the "633 box") was opened in December 2006 in the name of Claude and Christina. It was accessed eighty-four times between the time it was opened and July 11, 2008, usually by Claude. It was accessed twice by Claude on May 13, 2008 – once shortly after 11:00 a.m. and again shortly before 2:00 p.m.. The other box (the "595

box") was opened in the names of Claude, Christina and Aarika and was accessed thirty-four times from the time it was opened in July 2007 and August 30, 2008. On one occasion both Christina and Claude accessed the 595 box; Christina accessed it on the other occasions. Claude and Christina jointly owned two certificates of deposit, one with Claude's social security number and the other with Christina's. The couple also had a large amount of money on deposit at the bank. A search of state records revealed that neither Claude nor Christina had reported wages between March 2007 and September 2008. Finally, Claude's prior criminal history included one drug charge, two weapons charges, and one charge of armed robbery. Based on the information described above – as well as all the other information contained in the affidavit – the judge issued a search warrant authorizing a search of the two safe deposit boxes.

On October 9, 2009, deputies from the United States Marshal's Service executed an arrest warrant on Aarika. The arresting officers had information that Aarika was living in an apartment complex; when they arrived, they found her outside an apartment. To summarize matters, Aarika denies giving the officers consent to search, while the deputies testified that she consented to their search of the apartment. The apartment was searched, and the deputies found a large amount of currency, mail with Aarika's name, mail with Claude's name, and a set of digital scales. Aarika then requested permission to make another phone call (she previously called someone to get the key to the apartment); her request was granted. Aarika called her attorney, and after the conversation Aarika revoked her consent to search. Law enforcement officers remained in the apartment, while others took Aarika to the Greene County Jail and others sought a search warrant. After receiving a warrant signed by a state court judge (because a federal Magistrate Judge was not available), the deputies resumed their search.

## II. DISCUSSION

### A. Search of the Safe Deposit Boxes

A search warrant is supported by probable cause if the supporting affidavit presents a fair probability that evidence or contraband will be found in the location to be

3

searched. Supporting affidavits must be read in a common-sense fashion and should be evaluated based on the totality of the circumstances. E.g., United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995); United States v. Edmiston, 46 F.3d 786, 789 (8th Cir. 1995). Defendants complain about the inclusion of information from confidential informants, but the Court need not consider this issue because the remaining information establishes a fair probability that contraband or evidence of drug activity was stored in the safe deposit boxes. Christina insists the affidavit does not connect her to criminal activity, and both Christina and Aarika insist the affidavit does not provide any reason to believe they were storing evidence or contraband in the boxes. Even if they are correct (and, at least with respect to Christina, the Court tends to agree), they miss the point. Probable cause does not require a showing that they were responsible for any evidence or contraband in the boxes, nor does it require a showing that they were criminally culpable. The law only requires a fair probability that evidence or contraband will be found, not that any particular person placed it in the location. See United States v. Stults, 575 F.3d 834, 843 (8th Cir. 2009). The affidavit provided probable cause to believe Claude was using the boxes to store evidence or contraband. A fair, common-sense reading of the affidavit presents probable cause to believe:

    1.     Claude was engaged in drug activity.
    2.     Claude frequently arranged for or oversaw the drug transactions but did not always become personally involved.
    3.     Claude had large sums of money and no source of income.
    4.     The boxes were accessed with unusual frequency, particularly in light of his lack of income.[2]
    5.     The boxes were sometimes accessed on multiple times in a single day, or on consecutive days.

It was reasonable for the judge issuing the warrant to conclude that Claude was – personally or through others – storing drugs or money in the boxes. Whether those

---

[2] The Court notes the Report's misstatement about the frequency, but the true facts raise suspicion, particularly when one considers all of the circumstances outlined herein.

4

"others" (here, Christina) knew about the illicit source of money or otherwise have culpability is irrelevant.

Even if the warrant was not supported by probable cause, the motion would be denied because the law enforcement officers acted in good faith reliance on the affidavit. "Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007), cert. denied, 128 S. Ct. 1704 (2008) (citing United States v. Leon, 468 U.S. 897 (1984)). Reliance is unreasonable if the affidavit contains a false statement, the issuing judge abandoned his or her judicial role, when the warrant is so lacking in probable cause that reliance is unjustified, or when the warrant is so facially deficient that belief in its validity was unwarranted. Id. None of these circumstances are present here. Christina contends there must be a nexus between the criminal activity, the place to be searched, and an individual, but this is not correct; even if it is, there was a nexus to an individual: Claude. Christina also emphasizes the officers' knowledge that there were two boxes, but this fact was also known to the issuing judge. Finally, Defendants allege there are errors in the affidavit, but even if they are correct the alleged errors are so minor that they do not affect the analysis.

## B. Identification of Confidential Informants

Defendants contend the confidential informants needed to be identified to provide them with a fair opportunity to challenge the search. As indicated above, the Court disagrees. There is no need to discuss whether the confidential informants were sufficiently reliable to support a probable cause finding because probable cause exists even without their statements. Moreover, the information supplied by confidential informants largely explains law enforcement's subsequent actions and does not form a part of the probable cause determination.

## C. Search of the Apartment

Aarika challenges the search of the apartment. The Court sees no need to restate all of the testimony presented by her and the law enforcement officers. Her argument, essentially, is that she did not consent to the search. After reviewing the Record, the Court finds her to not be credible on this point and finds that she consented to the search.

Aarika also complains about the officers staying in the apartment while waiting for the warrant. Assuming this violated the Constitution, the remedy would be to suppress any evidence discovered after Aarika revoked her consent and before the warrant was issued. There being no evidence discovered in this time period, there is nothing to suppress.

Finally, apart from these conclusions, the Court doubts Aarika has standing to challenge any conduct occurring at the apartment. Aarika testified she did not live in the apartment, was not staying in the apartment, was not on the lease, and was not paying rent. The Fourth Amendment guards privacy interests that society recognizes and is prepared to protect. United States v. Jacobaea, 466 U.S. 109, 113 (1984); United States v. Welliver, 976 F.2d 1148, 1151-52 (8th Cir. 1992), cert. denied, 507 U.S. 1004 (1993). Aaraka contends she had an expectation of privacy because she had a key and was cleaning the apartment,[3] but these facts do not create an expectation of privacy. The apartment was not her office or place of employment, was not her home, was not her leasehold – it was, according to her testimony, a friend's apartment. Items belonging to her or bearing her name were in the apartment, but this does not establish

---

[3] Aarika explained she was cleaning the apartment because the tenant – whom she knew and had referred to the landlord – was gone.

an expectation of privacy in the premises. The Court concludes she had no expectation of privacy.

### III. CONCLUSION

For these reasons, Defendants' objections are overruled and the Report is adopted as the Order of the Court. Defendants' motions to suppress and for identification of confidential informants are denied.
IT IS SO ORDERED.

                                        /s/ Ortrie D. Smith
                                        ORTRIE D. SMITH, JUDGE
DATE: December 3, 2009             UNITED STATES DISTRICT COURT