**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Criminal Action |
| | ) | No. 08-03109-01-CR-S-ODS |
| CLAUDE X, | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Defendant has filed a Second Motion to Suppress Evidence and Addendum to Second Motion to Suppress, in which he asserts that all evidence seized in connection with the search of his house and his vehicle should be suppressed. [Documents # 117 and 118]. The government has responded to the motion. [Document # 120]. The matter was set for an evidentiary hearing, which was held before the undersigned on March 11, 2010. Defendant Claude X was present with counsel, Robert D. Lewis. The United States was represented by Timothy Garrison, Assistant United States Attorney ["AUSA"].

The government first called Shannon Stoneman. Officer Stoneman was employed by the Springfield Police Department at that time of the events in question. He was aware of defendant because he had heard that he was distributing drugs, and that he had a drug relationship with Melissa Owen. There was a warrant for her arrest for passing a bad check. On January 9, 2007, he had information that she was with defendant in a vehicle at a Wal-Mart in Springfield. The officer went to that site, saw Melissa Owen in defendant's vehicle, and called for back up from

Springfield Police Officer Daniel Ashton. Once he had made visual contact with Ms. Owen, he instructed Officer Ashton to make the stop. They pulled the vehicle over. Officer Stoneman heard Officer Ashton tell Ms. Owen to come talk to him. Melissa Owen did not bring her belongings with her. Officer Stoneman called dispatch to verify the warrant, and requested a K-9 officer to come to the scene. He did this as soon as Officer Ashton started talking to Ms. Owen. It was about 10 to 15 minutes before the K-9 officer arrived. The warrant confirmation and the officer arrived about the same time. Melissa Owen was placed under arrest, and was handcuffed. There was no way she could reach anything in the car. Officer Stoneman then went to the vehicle and told defendant to get out, because they were going to search the vehicle, incident to arrest. When they perform such a search, they search the area where the suspect was seated and the compartments within reach. This does not include a search of the trunk. Defendant denied consent to search the vehicle by locking it, and they did not do a search at that time. The officer then placed defendant in handcuffs for obstruction, and recovered the keys to the vehicle. A very short amount of time elapsed. The K-9 Officer, Officer Yarnell, directed the dog to sniff the exterior of the vehicle. The dog alerted on the rear part of the bumper by digging around it. At this time, Officer Stoneman had not completed processing the scene for Melissa Owen's arrest because he had not yet obtained her property out of the vehicle. They searched the trunk after the dog alerted on the vehicle. The dog got into the trunk and began indicating on some containers. They found a couple of containers, and he began to search inside the containers because that was where the dog was indicating. They found suspected drugs inside the containers. He did not consider the search of the trunk to be a search incident to Melissa Owen's arrest.

On cross examination, the officer testified that there was no traffic violation that caused the stop. He also agreed that the only reason for the stop was because he had information that there was an active warrant for Melissa Owen's arrest for passing a bad check in Greene County. He agreed that this is a misdemeanor offense. He testified that he positively identified Ms. Owen, and instructed Officer Ashton to stop defendant's vehicle. He heard Officer Ashton call her "Melissa," and tell her to go talk to Officer Stoneman. [Tr. 17]. He made contact with her by defendant's vehicle, and immediately placed her in handcuffs. They were about 3-4 feet from the back of the vehicle, and she could not have reached into the vehicle. The officer testified that he was going to search the car to find evidence of Melissa Owen having passed a bad check or some kind of evidence related to the warrant. He would have been looking for that evidence if he had searched the car. He acknowledged that she was in the caged unit of the car, which was the third car back when they went to search the vehicle after the dog's alert. In his report, it indicates that Officer Ashton talked to defendant, who asked why they had stopped him. He called the K-9 unit because he knew that Ms. Owen had had problems with drugs. The officer agreed that on this particular day, he did not have reasonable suspicion or any specific knowledge regarding drug activity when he called the K-9 unit, but he did have knowledge of Ms. Owen and her criminal history. He stated that he knew Ms. Owens had a problem with drugs, and he "absolutely" felt there might be some drugs in the car. [Tr. 21]. He testified that he also went back to the car to get Melissa's purse. He didn't ask defendant for permission to get in the car and get her purse. He just told him they were going to search the vehicle incident to the arrest of Owen. The officer agreed that defendant wasn't committing any crime, but he was put under arrest for obstructing. Before he asked him about getting in the car, he'd

committed no crime, and he would have been free to leave.

On redirect, the officer clarified that defendant was not free to leave until he had completed his arrest of Melissa Owen, which included securing her property. He never conducted the search incident to arrest, because, among other things, the car was locked, and the dog had not started to search the car. Defendant's vehicle was detained because Ms. Owen was inside, and they had a valid arrest warrant for her. He agreed that it was detained during the process of her arrest. While it was detained, the dog indicated the presence of narcotics. He began the search in the trunk, extended it to the engine compartment, and to the interior of the vehicle. The officer agreed with the government's characterization of the search as not being a search incident to arrest, but rather, as a search generated by the positive alert by the dog.

On recross-examination, the officer acknowledged that there wasn't anything in his report about his statement that he wanted to get into the vehicle because he wanted to retrieve Ms. Owen's purse. He agreed that the reason they detained defendant was because he refused to let them search his vehicle incident to Ms. Owen's arrest. Other than his refusal, he would have been free to leave, although his vehicle had to be detained because the officer hadn't completed a search incident to arrest.

The government next called Daniel Ashton, who was also a Springfield Police Officer at the time. He testified that he made a traffic stop of defendant's vehicle after Officer Stoneman had informed him that he had information that a person in the vehicle had a warrant pending for her arrest. After he stopped the vehicle, he looked inside, and the female fit the description he was given of Melissa Owens. She identified herself, and he asked her to step out of the vehicle. He then took her to Officer Stoneman, who began to confirm her identity and the warrant.

Officer Ashton went back to stand by the driver's side door for safety reasons. Officer Stoneman requested a drug detection dog, which arrived in 5-10 minutes. At the time the dog arrived, they were still waiting for the warrant to be confirmed. Officer Yarnell came and started to walk the dog around the vehicle; he alerted on the right rear bumper. The officers then asked defendant to step out of the vehicle, and told him they were going to search it. He refused "by locking the car with his key, remote key entry." [Tr. 29]. He believed that Officer Stoneman handcuffed defendant at that point. They continued to conduct a search of the vehicle, starting with the trunk.

On cross examination, the officer testified that he wrote a report in this case. The officer was not sure of the time frame, and could not remember if defendant was arrested and in handcuffs when the dog alerted. He knows he was out of the car, and they were talking when the dog arrived on the scene He would not disagree that defendant was already in custody when the dog alerted.

Officer Phil Yarnell was next called to the witness stand. He is a Springfield Police Officer. He is a K-9 officer, who has worked with "Marko," his canine, for seven years. They are a certified Police Service Dog Unit team. The certification is renewed annually, with the dog and handler being tested. Their certification was valid on January 9, 2007. He was working his regular shift that day when he received a radio call about a K-9 unit being requested. After he arrived on the scene, and waited for directions from the officer, he heard the sound of the car door being locked. He advised Officer Stoneman that the car had just been locked. Officer Stoneman went over and started talking to defendant. Officer Yarnell went ahead and began his search with Marko of the exterior of the vehicle. The dog shot forward, became very nasal, and

indicated to an odor on the vehicle. He usually scratches, which he did on the back bumper of the vehicle. That is consistent with his training when he locates a source of odor.

On cross examination, the officer testified that he did make a report regarding this incident. He agreed that he arrived and heard Officer Stoneman tell defendant to step back from his car. He heard the officer tell defendant that he was going to search the interior of the vehicle incident to Ms. Owen's arrest, and defendant refused. The officer testified that this was before he searched with his dog. He was not sure if defendant was already in handcuffs when the K-9 search began, but he had heard defendant lock the car when he was preparing his dog.

The next witness for the government was Robert Netzer. He owns the property at 308 South Market Street. He had the property leased in November of 2006 to Claude and Christina X. The lease was for a year. After that, they paid month to month. In June of 2009, they stopped paying rent. By November 2, 2009, they were four or five months behind on their rent. He tried to reach them, but they were gone most of the winter of 2008 and in 2009. He was aware that defendant was in jail on November 2, 2009. Late in September or early October, Christina asked for permission to enter the house to get clothes and he allowed her to do so. On November 2, he went onto the property to check on it; he was in the process of evicting Claude and Christina X. He had changed the locks a few weeks before because he did not have a spare key. He did not enter the property at the request of law enforcement. He just went in as the landlord to see what the condition was and what he had to clean up. He went through the whole house, opening everything. They house was fully furnished. The tenants had left everything there, including clothes, hats, shoes, and even food in the refrigerator. Part of why he was there was to see what he would have to do with their property. On that day, he encountered DEA Agent Krisik while

he was in the garage. Agent Krisik pulled up in the driveway, and asked him if he had noticed anything in the house. He may have asked if he had seen anything illegal. He told him he noticed five or six different bottles of pills. He took him inside at that time, into the closet in the master bedroom. He showed him where the pills were. The officer did not go anywhere in the house that Mr. Netzer had not already been.

On cross examination, the witness testified that the eviction notice was not posted on November 2. It was actually posted the next week. When he entered the premises, a lot of defendant's property was still in the house. He tried to reach them before he went inside the house, but was unable to do so. On that date, no one had given him permission to be in the house.

The government next called Agent Timothy Krisik, who is employed with the DEA. On November 2, 2009, he drove to the property because he had spoken to Mr. Netzer several weeks before, who told him Claude and Christina X were going to be evicted. He wanted to see if Christina X was still there; he admitted that he was conducting a drug investigation that she may have been related to. He had not arranged to meet with Mr. Netzer that day. He asked about the eviction, what stage of the process he was in, "and just to see if he had heard from Christina X." [Tr. 49]. He did not ask to search the house, but he did ask Mr. Netzer if he had found any contraband in the house. Mr. Netzer hesitated and then said that he had found some bottles of pills in one of the bedrooms. This was interesting to Agent Krisik because through the course of his investigation of defendant, he was dealing with prescription drugs, as well as other types of drugs. He asked Mr. Netzer if he could go in the house. Mr. Netzer agreed, and accompanied him inside. He took him to the master bedroom, where Mr. Netzer had previously located the

bottles of pills. The officer looked at them to see to whom they were prescribed, which was Claude X or Claude Turner, and Christina X. He asked Mr. Netzer to leave the bottles in place, and he would speak to him the next day. He thereafter applied for a search warrant, and included the information that he had been in the house that day. A search warrant was issued.

On cross examination, the officer testified that when he went in with the landlord and found the prescription pills they appeared to have been legally prescribed by a doctor. He was concerned about the quantity of the pills. He did not recall if some of the pills were older or newer. He agreed that it would have been legal to possess those drugs.

Defendant contends, initially, that the traffic stop of defendant's vehicle and the subsequent search of the vehicle as being incident to the arrest of passenger Melissa Owen was in violation of the Fourth Amendment. He asserts that Ms. Owen was not in defendant's vehicle, but rather was in the caged portion of the police officer's vehicle, and she was not within reaching distance of the vehicle. He also asserts that it was not reasonable to believe that the vehicle contained evidence of the offense for which she was arrested, and that the search was therefore contrary to Arizona v. Gant, 129 S.Ct. 1710 (2009).

Further, he contends that the search warrant for 308 S. Market Street, Nixa, Missouri, was in violation of the Fourth Amendment because Agent Krisik entered the residence prior to obtaining the search warrant without the consent of either resident, Claude or Christina X, and without a warrant. He asserts that upon entering the residence, Agent Krisik saw five bottles of prescription pills for defendant and then filed his affidavit for a search warrant describing what he had seen when he entered the premises. It is his position that what was seen during an illegal entry cannot provide a basis for a subsequent search warrant. He also contends that the search warrant was for "evidence

of unlawful drug trafficking," and the affidavit clearly indicates that the pills were prescription medicines that would not be evidence of unlawful drug trafficking. [Defendant's Motion at 2]. In his Addendum, defendant asserts that in regard to the search warrant for the residence, it included the allegation of the January 9, 2007, traffic stop of defendant's vehicle. He contends that this information should not have been considered in issuing the search warrant because the search of defendant's vehicle was in violation of and contrary to Gant. Therefore, it is his position that a portion of the information relied upon by the affiant and the issuing Magistrate was information and evidence that was in violation of the Fourth Amendment.

The government agrees that the search of defendant's vehicle was not a search incident to arrest, despite Officer Stoneman's explanation of his intent to conduct a search incident to arrest. It is the government's position that any analysis under Gant is inapposite, as the facts of this case would never have supported a search incident to arrest, and it could not reasonably be expected that evidence of the crime for which Ms. Owen was arrested, passing bad checks, could be found in the car. The government submits that where police have probable cause to believe an automobile contains evidence of illegal activity, a warrant is not required. It is asserted that an indication of the presence of drugs from a drug-trained dog is widely recognized as probable cause to believe drugs are present, and that a dog sniff does not compromise any legitimate privacy interest because it only reveals the presence of contraband. Further, it is contended that a dog sniff of the exterior of a car conducted during a lawful traffic stop, executed in a reasonable manner, does not infringe upon a constitutionally protected privacy interest. The government submits that, in this case, defendant's vehicle had been lawfully stopped to execute a valid warrant for a passenger; and before the police had concluded their routine procedures pertaining to the arrest, the K-9 unit arrived and a trained

dog indicated the presence of drugs. It is contended that because the detention of defendant's vehicle was no longer than necessary to execute the valid arrest warrant before the dog sniff, the duration of the detention was not unreasonably long. Therefore, the government asserts that the search of the vehicle was not in violation of the Fourth Amendment.

Regarding the search of defendant's residence, it is the government's position, initially, that it is questionable that defendant has standing to challenge the search, given that he had been in the Greene County jail for more than a year prior to the search, and a rent payment had not been made in approximately five months. Even assuming standing exists, it is contended that there was no Fourth Amendment violation because Mr. Netzer, the property owner, had conducted a private search before Agent Krisik entered the property, and the officer's search did not exceed the scope of the prior private search. The government argues, additionally, that defendant has failed to establish that Mr. Netzer acted as a government agent, rather than a private party. Further, the government contends that United States v. Leon, 468 U.S. 897, 920 (1984), would apply because Agent Krisik acted in objective good faith.

The Court turns first to defendant's argument that the search of the vehicle was an illegal search incident to arrest. The basis for defendant's second motion to suppress is that the search violated the Fourth Amendment under the ruling in Gant because Ms. Owen was not in a position to reach anything in the vehicle, and it was not reasonable to believe the vehicle contained evidence of writing bad checks.

The government submits that there was no search incident to arrest, and that Gant is inapposite. Rather, it is argued that the search conducted was an exception to the warrant requirement because of the indication of illegal drugs in the vehicle by the drug dog. The

government submits that, regardless of the "words the officers may have used to describe their intentions to defendant, their actions are what are at issue here, and were not prohibited by the Fourth Amendment." [Government's Response at 7].

There is no dispute that Officer Stoneman consistently testified that he intended to search the vehicle incident to the arrest; that he informed defendant of this, and that defendant refused; and that he handcuffed and arrested defendant for obstruction after he locked the car. The officer testified that he wanted to search the car to find evidence of Melissa Owen having passed a bad check or some kind of evidence related to the warrant. He also testified, however, that he did not consider the search of the trunk to be a search incident to Melissa Owen's arrest. The testimony was clear, moreover, that Ms. Owen's property had not been secured from the interior of the vehicle at the time Marko began to sniff the exterior of the vehicle, and therefore, that the officers had not completed their routine procedures in arresting Ms. Owen. The evidence adduced at the hearing established that the search of the vehicle began after the drug dog alerted on the right rear bumper of the vehicle. It began, pursuant to Marko's alert, in the trunk, where illegal drugs were found. The search extended to the engine compartment of the car, and the interior of the vehicle. Regardless of statements made or beliefs held by the officers, the facts of this case establish that the search that actually occurred was not a search incident to arrest. The Court agrees, therefore, that Gant does not apply to this case.

The issue, therefore, is whether the search that was conducted was one in which the officers had probable cause to believe that the vehicle contained evidence of illegal activity, and whether the search of the entire vehicle was conducted under the vehicle exception to the warrant requirement of the Fourth Amendment, generated by the positive alert by the drug dog.

The law is clear that the use of a properly trained and reliable drug dog to sniff the exterior of a vehicle is not an illegal search under the Fourth Amendment if the traffic stop is "lawful at its inception and otherwise executed in a reasonable manner." United States v. Olivera-Mendez, 484 F.3d 505, 512 (8th Cir. 2007), quoting Illinois v. Caballes, 543 U.S. 405, 407, 408 (2005). If, however, the stop is unreasonably prolonged before the dog is employed, such a dog sniff may be the product of an unconstitutional seizure. Olivera-Mendez, 484 F.3d at 511. A properly trained drug dog's alerting provides probable cause for the arrest and search of a person or for the search of a vehicle. Id. at 512; United States v. Hogan, 539 F.3d 916, 921 (8th Cir. 2008).

In this case, defendant did not challenge the validity of the stop. The evidence adduced at the hearing established, in any event, that Officer Stoneman had knowledge of Melissa Owen's activities that gave him reasonable suspicion to believe that she was in defendant's vehicle and that there was an outstanding warrant for her arrest on drug charges. There is no question, therefore, that the reasons testified to regarding Officer Stoneman's reason for stopping the vehicle established a valid traffic stop under Terry v. Ohio, 392 U.S. 1, 19 (1968). Additionally, Officer Yarnell testified as to the training, experience, and reliability of the drug dog. A drug detection dog is considered reliable when it has been "trained and certified to detect drugs." Olivera-Mendez, 484 F.3d at 512 (quotation omitted). Defendant has not challenged the training or reliability of the drug dog used in this case. Further, there is no indication that there was an unreasonable lengthening of the detention of the vehicle It was estimated by Officer Stoneman that it took 10-15 minutes for the K-9 unit to arrive, and by Officer Ashton that it was 5-10 minutes. The testimony adduced at the hearing established that the arrest of Ms. Owen

was still in process when the drug dog arrived and began sniffing the vehicle for drugs. Therefore, there was no unconstitutionally prolonged traffic stop. The ensuing search of the entire vehicle after the alert by a trained and certified drug dog did not violate any Fourth Amendment Right.

After fully reviewing the evidence, the Court finds that it must be recommended that the motion to suppress evidence seized from defendant's vehicle be denied.

Defendant also challenges the search of his residence in Nixa, Missouri. He contends that the search warrant was issued without the requisite probable cause. It is his position that Agent Krisik entered the premises without the consent or permission of either resident and without a warrant, and what he saw cannot provide a basis for a subsequent search warrant. Further, he contends that the search warrant was "for evidence of unlawful drug trafficking," and his affidavit clearly indicates that the five bottles of medication were prescription drugs, prescribed by a doctor for defendant. He also submits that the search warrant violated the Fourth Amendment because it included as a basis in the affidavit the January 9, 2007, traffic stop, and the search of defendant's vehicle as a result of that stop was illegal. Accordingly, he contends that a portion of the information relied upon by the affiant and the issuing judge was evidence obtained in violation of the Fourth Amendment.

Initially, the government challenges defendant's standing to contest the search of the residence. The Fourth Amendment protects against both unreasonable searches and unreasonable seizures. United States v. Valerie, 424 F.3d 694, 706-09 (8th Cir. 2005). According to the Supreme Court, a Fourth Amendment search "occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." United States v. Jacobaea,

466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). The law provides that an individual challenging a search and seizure can establish a sufficient interest to constitute standing "if he has an adequate possessory or proprietary interest in the place or object searched" and if this assertion of a property interest is supported by an expectation of privacy. E.g., See United States v. Kelly, 529 F.2d 1365, 1369 (8th Cir. 1976); United States v. Muhammad, 58 F.3d 353, 355 (8th Cir. 1995), citing United States v. Stallings, 28 F.3d 58, 60 (8th Cir. 1994).

From the facts that were adduced at the hearing in this case, the Court finds that there is a serious question regarding whether defendant had an adequate proprietary and privacy interest in the apartment, sufficient to establish standing. This is true because of the fact that he had not been there in over a year; no one had paid rent in approximately five months; the property owner was in the process of evicting defendant and Christina X; he had changed the locks; Christina X had been removing property from the residence; and no one had responded to the landlord's efforts to reach them before he entered the property on November 2, 2009.

Assuming, however, that defendant does have standing to challenge the search, it is clear from the facts of this case that any privacy interest defendant might assert was breached by the property owner, Mr. Netzer, who was not acting as a law enforcement officer, nor at the behest of law enforcement. The credible evidence adduced at the hearing was that Mr. Netzer acted as the landlord, a legitimate property owner, a private actor, and perfectly within his rights. Mr. Netzer, a neutral witness, testified convincingly that he had his own reasons for entering the residence that day. Further, when Agent Krisik stopped to talk to him, Mr. Netzer told him about the bottles of prescription drugs he had seen, and took Agent Krisik inside, accompanying him and directing him to the location of the drugs. There is nothing in the evidence to suggest

that Agent Krisik's entry into the property, and his observation of the prescription drugs in the master bedroom, exceeded the scope of the search conducted by Mr. Netzer. Therefore, the Court finds that no Fourth Amendment violation occurred in this case on the basis of Agent Krisik's entry into the property.

The law is clear that a warrant is supported by probable cause if, "given all the circumstances set forth in the affidavit . . ., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability" that contraband or evidence of a crime will be found in the place to be searched. United States v. Edmiston, 46 F.3d 786, 789 (8th Cir. 1995), quoting Illinois v. Gates, 462 U.S. 213, 238 (1983).

Because the search of the vehicle was proper, the information included in the affidavit in support of the search warrant that included evidence from the vehicular search was proper. Additionally, the officer's entry into the property was not illegal. Regarding the "evidence of unlawful drug trafficking," the officer credibly testified that he had information that defendant dealt in prescription drugs, as well as other drugs. Therefore, the drugs found in the residence could fairly be described as potential evidence of illegal drug activity. In this case, the Court believes that based on the information set forth in the affidavit, the issuing judge could conclude that there was probable cause to support the search warrant.

Even assuming, however, that the warrant in this case was not based on probable cause and found to be defective, the Court finds that the good faith exception enunciated in Leon would apply. It is clear that Agent Krisik relied in good faith on what he believed to be a valid search warrant, which was reviewed and signed by a neutral magistrate. Accordingly, it will be recommended that defendant's motion to suppress evidence seized from his residence be denied.

Having fully reviewed the record in this case, including the testimony adduced at the hearing, the Court finds that it must be recommended that defendant's Second Motion to Suppress be denied.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 72.1 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant's Second Motion to Suppress be denied.

/s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date: 4/16/10